**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARQUITA RAINES, | ) |
|     *Plaintiff*, | ) |
| v. | ) No. 19 C 4992 |
| ROBERT WILKIE, U.S. Secretary of Veterans Affairs, | ) Judge Virginia M. Kendall |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marquita Raines, a former employee of the Veterans Affairs' Chicago Regional Office, sued Defendant Robert Willie, Secretary of Veterans Affairs (the "VA"), for disability discrimination, failure to accommodate, hostile work environment, and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et* seq. Before the Court is Wilkie's motion for summary judgment on all counts under Federal Rule of Civil Procedure 56. For the following reasons, Wilkie's motion [38] is granted.

**BACKGROUND**

I. **Raines' First Request for Accommodation**

Marquita Raines began working as a claims assistant at the VA Chicago Regional Office in June 2015. (Dkt. 45 at ¶ 1). In or around June 2016, the VA installed new lightbulbs on the floor on which Raines worked causing the work environment to become significantly brighter. (*Id*. at ¶ 1). On June 21, 2016, Raines disclosed to her supervisor Mike Lacy that the brighter lighting caused her to have migraines and made her feel ill. (*Id*.) The next day, Raines emailed another supervisor, Alden Only, explaining that she was unable to sit at her desk under the bright lighting

1

and asked to move her desk to a darker location. (*Id.*) On June 23, Lacy advised Raines he had found a desk with dimmer lighting in a different part of the building. (*Id.* at ¶ 2). Raines examined the location of the desk and determined that it might be an effective solution. (*Id.*) Ultimately, however, Lacy and Only advised that according to Service Center Manager, Ruthie Grezlik, Raines needed to remain at her current desk and would not be accommodated until she presented a doctor's note indicating a medical reason for the accommodation. (*Id.* at ¶ 3).

Later that day on June 23, 2016, Raines filed a formal request for accommodation ("RFA") requesting the following accommodations for her migraines:

- Create a more natural lighting
- Change lighting completely
- Provide an anti-glare filter for computer monitor
- Provide a liquid crystal display monitor that has a better refresh rate
- Move employee to a private area to allow for personal adjustment to appropriate lighting
- Allow the employee to wear sunglasses or anti-glare glasses in the work area
- Allow telework (Allow the employee to telework when the employee is experiencing a migraine)
- Provide flexible leave when the employee is experiencing a migraine

(Dkt. 46 Ex. 2). The RFA indicated that requested accommodations were continued on an additional page. (*Id.*) On the additional sheet, Raines repeated her request for several of the accommodations above along with the following additional accommodations:

- Add fluorescent light filters to existing fluorescent lights to create a more natural lighting
- Move employee to a more private area or away from high traffic areas
- Provide an environmental sound machine to help mask distracting sounds
- Provide noise cancelling headsets
- Provide sound absorption panels
- Encourage workers to keep non-work related conversation to a minimum
- Do not mandate attendance at after-hours social functions if an employee is affected by a disruption in sleep patterns
- Provide the employee with a dark, private area to go to when experiencing a migraine

(*Id.*) The VA maintains it did not receive the additional page of accommodations. (Dkt. 49 at ¶4).

2

After receiving her RFA, the VA sent Raines' doctor a "Request for Medical Documentation" regarding Raines' migraines. (*Id*. at ¶ 6). Raines' doctor indicated that Raines "is having physical discomfort due to migraines" caused by "[l]ight sensitivity as well as other triggers" and described her migraines as causing "[m]oderate to severe pain," "[s]ensitivity to light, noise, or odors," "[b]lurred vision," and "[n]ausea or vomiting, stomach upset, abdominal pain," "[l]asting [a] few hours to days at a time." (Dkt. 39 at Ex. A-15) He further noted:

> With better accommodations patient will be able to continue to be most productive. By working from home patient will be able [to] take time and rest head as needed and continue to work when migraine[s] seize [sic]. If at place of employment, by allowing patient into an area without triggers, this will help accommodate patient…

(*Id*.)

On or around July 6, 2016, Raines walked the work floor with human resources specialist, Greg Jackson, to identify options for an alternative workspace. (Dkt. 45 at ¶ 10). Raines claims she identified two potential desk locations, but Jackson provided various excuses for why Raines could not use them. (Dkt. 49 at ¶ 13). On July 8, Raines also met with assistant manager Ryan Roufus regarding her RFA. (*Id*. at ¶ 9; Dkt. 45 at ¶ 10).

On July 19, 2016, the VA approved Raines' RFA, offering to "move Ms. Raines['] workspace to a window cube[,]" noting that "[t]his will allow for Ms. Raines to be seated by as much natural light available to employees in the building" and that "[t]his location is also very quiet with minimal foot traffic." (Dkt. 45 at ¶ 11; Ex. A-6). The VA also indicated it would provide Raines with an anti-glare filter for her computer. (Ex. A-6). The VA acknowledged that although it declined to approve all the accommodations requested, it "fe[lt], based on the request, this [was] a sufficient alternative accommodation." (*Id*.)

Raines felt the window cube "would have done nothing to alleviate her symptoms because it was still in the same part of the building with the intense fluorescent lighting." (Dkt. 49 at ¶ 15).

3

Further, she felt that the antiglare screen would only partially alleviate her symptoms. (*Id*.) Raines identified another desk that would be a better location, but Roufus indicated the desk was needed for new hires. (*Id*. at ¶ 17). When asked, Roufus also represented that "[t]elework would not be considered" based on correspondence he received from human resources. (*Id*.) (Dkt. 45 at Ex. 15).

On August 2, 2016, Raines conditionally accepted the VA's offered accommodations, indicating, "I can accept this as for now until further accommodations are answered." (Dkt. 49 at ¶ 18). Human resources specialist Jackson informed her, however, that she either had to accept the accommodations, in which case no other accommodations would be considered, or reject them and request reconsideration. (*Id*. at ¶ 20). Raines consequently declined the offered accommodations. (*Id*.)

## II. Raines' Second Request for Accommodation & First EEO Complaint

On August 4, 2016, Raines filed a second formal RFA for her migraines requesting the following accommodations:

- Telework 4 days a week
- Allow antiglare screen for computer monitors
- Remove the bulb over work area or move to another desk w[ith] less unnatural lighting.
- Allow to move to dimmer area when experiencing migraines.

(Dkt. 45 at ¶ 13). On August 17, Raines went on medical leave through November 9, 2016 for a surgery on her left arm. (*Id*. at ¶ 14). The VA allowed Raines to take leave without pay through November 30, 2016. (Dkt. 49 at ¶ 28).

On September 20, 2016, while Raines was still on leave, the VA approved Raines second RFA, offering to allow Raines to telework four days a week for a trial period of 90 days beginning when Raines returned from medical leave. (Dkt. 45 at ¶ 16). After 90 days, Raines' performance would be evaluated to determine whether further teleworking is permitted. (Dkt. 39 at Ex. A-18).

4

The VA also reiterated its offer to move Raines' workspace "to a window location, seated by as much natural light as possible … that is quiet, with minimal foot traffic" and provide her with an anti-glare filter. (*Id*). Raines received the approval determination at her home on October 15, 2016. (Dkt. 49 at ¶ 25).

On October 20, 2016, Raines emailed human resources representative Jackson asking when she will be able to begin working from home after she returns from leave and whether she will be accommodated in the interim by being placed "in a dimmer environment with no bright lights of any sort". (*Id*. at ¶ 26). Jackson informed Raines that in order to telework she needed to complete a telework agreement and telework training on her employee portal, after which she would be issued a laptop and would be allowed to start teleworking. (*Id*. at ¶ 27). Jackson further explained that the RFA approval states what in-office accommodations will be provided to Raines and that no further accommodations would be considered at this time. (*Id*.)

### III. Raines' Termination

On December 1, 2016, after Raines' leave expired, Raines arrived at work but her keycard did not work (*Id*.) Raines waited for 30 minutes to see if someone would come by and let her in. (*Id*.) When no one did, she went home and notified her supervisor Only, who advised her that the VA had changed everyone's keycards while she was on leave. (*Id*.) Plaintiff claims she does not recall Only giving her instructions for obtaining a new key card at the time. (*Id*.) As Raines was approved for leave without pay until January 2017, she did not return to the office for the rest of the month. (Dkt. 45 at ¶ 19; Dkt. 49 at ¶ 29).

In January 2017, Raines claims she arrived at work and followed someone else into the building because she still did not have a working keycard. (Dkt. 49 at ¶ 30). After Raines arrived at her desk, however, she began to have a panic attack and immediately left. (*Id*.) Raines did not

return to work for the rest of year. (Dkt. 45 at ¶ 19). On May 12, 2017, after giving her multiple orders to return to work, the VA sent Raines a letter informing her that she would be terminated for her repeated unauthorized absences. (*Id*. at ¶¶ 20–23).

On May 19, 2017, Raines sent an email to a human resources representative, Kimberly Kuhl, inquiring what the status of her reasonable accommodation was and what accommodations would be provided when she came into the office. (Dkt. 49 at ¶ 31). Kuhl reiterated the accommodations approved by the VA and responded that telework training had been loaded into Raines' employee portal. (*Id*.) Raines also emailed another human resources representative on June 5, 2017, once again asking about what specific accommodations she will receive. (*Id*. at ¶ 34). The representative restated the accommodations previously approved by the VA. (Dkt. 46 at Ex. 11). Raines reiterated that she needed a "dimmer setting," although she did not know "where a dimmer setting would be" or look like in the office. (*Id*.)

On June 12, 2017, the VA terminated Raines' employment. (Dkt. 45 at ¶ 24).

## IV. Raines' EEO Complaints

While on medical leave for her surgery, on August 25, 2016, Raines filed an EEO complaint against the VA, alleging, among other things, that the VA failed to accommodate her disability. (*Id*. at ¶ 25). On July 25, 2017, after her termination, Raines filed a second EEO complaint against the VA alleging she was terminated based on her disability and subjected to a hostile work environment. (*Id*. at ¶ 28). The VA's Office of Employment Discrimination dismissed both complaints. (*Id*. at ¶¶ 27; 29). Raines subsequently filed the present suit alleging disability discrimination, failure to accommodate, hostile work environment, and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*.

**LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). As the "'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

**DISCUSSION**

With the exception of her failure to accommodate claim, Raines has voluntarily withdrawn her claims. (Dkt. 47 at 7). Thus, although the VA moves for summary judgment on all counts, the Court only considers whether Raines had raised a triable issue with regards to her failure to accommodate claim. To succeed on a failure to protect claim under the Rehabilitation Act, Raines must "prove that (1) [s]he was a qualified individual with a disability, (2) the [VA] was aware of h[er] disability, and (3) the [VA] failed to reasonably accommodate h[er] disability." *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019). The VA does not dispute that it was aware Raines had a disability--migraines. The only questions at issue are whether Raines is a "qualified individual" within the meaning of the Act and whether the VA failed to reasonably accommodate her migraines. "Because of the similarity between the prima facie requirements under [the]

Rehabilitation Act and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* (2000), we look to our case law under the ADA to determine whether a plaintiff has established his prima facie burden." *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006).

I.  **Qualified Individual**

A "qualified individual with a disability" is someone who, with or without a reasonable accommodation can perform the essential functions of her position. *Vargas v. DeJoy*, 980 F.3d 1184, 1188 (7th Cir. 2020). As attendance is a basic requirement of most jobs, "an employee who does not come to work cannot perform the essential functions of his job." *Fogle v. Ispat Inland, Inc.*, 32 Fed. Appx. 155, 157-58 (7th Cir. 2003); *accord Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015). The parties do not dispute that attendance was a requirement of Raines' employment at the VA and the evidence also supports that conclusion. (*See* Dkt. 45 at ¶¶ 5-6) (Dkt. 39 Ex. A-10).

The undisputed facts establish that after requesting accommodations for her migraines on June 23, 2016 and again on August 4, 2016, Raines did not show up to work for nearly 10 months— August 17, 2016 through her termination on June 12, 2017 (with the exception of two days). (Dkt. 49 at ¶¶ 22, 28, 29) (Dkt. 45 at ¶ 19). For the first five months of this period, through December 2016, Raines was on medical leave or was approved for leave without pay (*id.*), but even "medical leave spanning multiple months does not permit the employee to perform the essential functions of his job. To the contrary, the inability to work for a multi-month period removes a person from the class protected by the" Rehabilitation Act. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017).

More importantly, Raines did not show up to work even *after* her approved leave expired in January 2017. Raines blames her absences on the VA's failure to accommodate her migraines,

8

but the undisputed evidence suggests otherwise. The VA approved Raines second RFA while she was on medical leave on September 20, 2016, offering Raines the ability to work remotely for four days a week, sit in a location with more natural light and less noise while in the office, and use an antiglare filter for her computer. (Dkt. 45 at ¶ 16). Raines requested these exact accommodations in both of her RFAs and nonetheless failed to attend work or complete the requirements to telework. (Dkt. 49 at ¶¶ 4, 21). Moreover, "[a] qualified individual is one who can perform the 'essential functions' of h[er] position, with *or without* a reasonable accommodation." *Vargas*, 980 F.3d at 1188 (emphasis added). Thus, Raines dissatisfaction with the accommodations offered or lack of faith that they would actually be implemented is no excuse for her absences. Raines perpetual absence from work after requesting accommodations that were given to her defeats her failure to accommodate claim. There is no triable issue of fact regarding whether Raines is a "qualified individual" under the Rehabilitation Act.

## II. Reasonable Accommodation

Whether or not an accommodation is reasonable "is a highly fact-specific inquiry and requires balancing the needs of the parties." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 968 (7th Cir. 2020) (internal quotations and citation omitted). "An employer need only provide a qualified individual with a 'reasonable accommodation, not the accommodation [the employee] would prefer.'" *Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012). The obligation to accommodate a disability also "brings with it a requirement that both the employer and the employee engage in a flexible 'interactive process' and make a 'good faith effort' to determine what accommodations are necessary." *Yochim v. Carson*, 935 F.3d 586, 591 (7th Cir. 2019) (citation omitted). "If this process fails to lead to reasonable accommodation of the disabled

9

employee's limitations, responsibility will lie with the party that caused the breakdown[.]" *E.E.O.C. v. Sears*, Roebuck & Co., 417 F.3d 789, 805 (7th Cir. 2005).

As Raines has failed to show she is a qualified individual within the meaning of the Rehabilitation Act, the Court need not address the merits of her failure to accommodate claim. However, even if Raines was a qualified individual, summary judgment is still warranted because no rational trier of fact could find that the VA failed to offer Raines reasonable accommodations or engage in the interactive process in good faith.

The VA offered to accommodate Raines' migraines on two occasions. On July 19, 2016, after reaching out to Raines' doctor regarding the nature and severity of her migraines, the VA approved Raines' first RFA, offering to (1) move Raines' workspace by a window with natural light and minimal noise or foot traffic and (2) provide her with an antiglare filter for her computer. (Dkt. 45 at ¶ 11). Although these accommodations were among those requested by Raines, she declined them because she felt they would be ineffective and did not want to waive her ability to request further accommodations. (Dkt. 49 at ¶¶ 4, 15, 18). While Raines dwells on the fact that the first round of accommodations were never actually provided to her, the VA cannot face liability for the failure to provide accommodations that Raines rejected. *See Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 682 (7th Cir. 2010) ("By rejecting the proposed accommodations, [the employee] was responsible for terminating the interactive process and hence not entitled to relief under the ADA."); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996).

Oddly, in her second RFA, Raines requested only a fraction of the accommodations from her first RFA and repeated her requests for the allegedly ineffective accommodations the VA had previously offered. Raines requested: (1) teleworking four days a week; (2) an antiglare screen for

her computer; (3) removal of the bulbs over her work are or moving to another desk with less unnatural lighting; and (4) moving to a dimmer area when experiencing migraines. (Dkt. 49 at ¶ 21). On September 20, 2016, the VA offered the following accommodations: (1) teleworking four days a week; (2) an antiglare screen for Raines' computer; and (3) moving Raines "to a window location, seated by as much natural light as possible" and minimal noise. (Dkt. 45 at ¶ 16). Once again, despite having requested them, Raines maintains that the offered accommodations were ineffective, and consequently unreasonable, because she needed an in-office workspace with dimmer lighting, not merely one with more natural lighting. (Dkt. 47 at 13). She argues that although she tried to communicate this to the VA on several occasions, the VA merely reiterated the accommodations it had already offered, and thus, caused a breakdown in the interactive process. There are several problems with this position.

First, Raines does not present evidence that she discussed the meaningful difference between the offered accommodation (a workspace with more natural lighting) and the requested accommodation (dimmer lighting) with the VA. The evidence merely shows that Raines emailed several individuals asking what specific accommodations would be made "to avoid the lighting" or stating that she needs "a dimmer environment with no bright lights." (Dkt. 46 Ex. 9). In other emails, Raines merely asked what accommodations will be provided when she comes into work or stated that she needed a "dimmer setting," but was unable to identify what that setting might be. (Dkt. 46 Ex. 11). Without more information, the VA had no reason to believe that what it had offered Raines—the opportunity to telework and a desk with natural lighting —was any different than exactly what Raines wanted—an environment with dimmer lighting. This is particularly true given that in her second RFA Raines requested "[r]emov[al] [of] the bulbs over [her] work area *or* [a] move to another desk w[ith] less unnatural lighting." (Dkt. 49 at ¶ 21) (emphasis added). Thus,

11

Raines failed to adequately communicate her needs to her employer. *See Hoppe*, 692 F.3d at 840 ("[A]n employee who fails to uphold her end of the bargain—for example, by not clarifying the extent of her medical restrictions—cannot impose liability on the employer for its failure to provide a reasonable accommodation.") (internal quotations and citation omitted).

Second, Raines' refusal to attend work until she received assurances from the VA that it would accommodate her in the manner she preferred is what led to a breakdown in the interactive process. Had Raines attended work, she would have been able to continue the interactive process by requesting further accommodations if the window location proved ineffective. In fact, Raines admitted that because she was "unsure of all the spots within the regional office," she could not tell the VA "where a dimmer setting would be." (Dkt. 46 Ex. 11 at 1). Raines did not even show up to the office long enough to complete her telework training and agreement, which she agrees would have been the best accommodation for her disability. Thus, it was Raines' failure to attend work that halted the interactive process and precluded the VA from ultimately accommodating her migraines.

Finally, the offered accommodations were reasonable in light of the recommendation provided by Raines' doctor, who suggested Raines either be allowed to telework or sit in "an area without triggers." (Dkt. 49 at ¶ 7). Raines "apparent displeasure with the way in which [her employer] decided on that accommodation, or with its failure to provide the exact accommodation [s]he would have preferred is irrelevant." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). While Raines faults the VA for not adequately considering or unreasonably rejecting other accommodations, the interactive process ultimately led to reasonable accommodations, which is all the Rehabilitation Act requires. *See Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013) ("[T]he failure to engage in the interactive process required by the ADA is not an

independent basis for liability under the statute, and that failure is actionable only if it prevents identification of an appropriate accommodation for a qualified individual.").

On the facts before the Court, no reasonable jury could find that the VA failed to provide reasonable accommodations for Raines' migraines or failed to engage in the interactive process. The VA is entitled to summary judgment on that claim.[1]

## CONCLUSION

Raines' perpetual absence from work precludes her from protection under the Rehabilitation Act, and although the VA provided reasonable accommodations for Raines' disability, Raines' actions and absences prevented the VA from accommodating her. For these reasons, Defendant Wilkie's motion for summary judgment [38] is granted as to all counts.

_____
Virginia M. Kendall
United States District Judge

Date: May 4, 2021

---

[1] As Raines' failure to accommodate claim fails on the merits, the Court declines to consider whether the claim is also untimely as the VA argues in its briefing. (Dkt. 38 at 8–10).